James A. WASHINGTON, Plaintiff,

v.

UNITED STATES, Defendant.

No. 10–334C.

United States Court of Federal Claims.

July 30, 2010.

---

James A. Washington, pro se, Washington, D.C.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, James A. Washington, has filed a complaint seeking damages for actions taken by the U.S. Army during and after his work as a civilian with that organization. Pending before the court is Mr. Washington's motion for court assistance in obtaining legal counsel. The government has not responded to Mr. Washington's motion.[1]

### ANALYSIS

In the past, doubt existed whether this court possessed the ability to cause counsel to be appointed for an indigent plaintiff. The answer to this question turned and still turns on the applicability to this court of 28 U.S.C. § 1915(e)(1), which provides that "[t]he court may request an attorney to represent any person unable to afford counsel." In addressing this issue twenty-two years ago, the Federal Circuit in *Lariscey v. United States,* 861 F.2d 1267 (Fed.Cir.1988), commented that:

> The Claims Court held that it had neither the authority to appoint counsel ... nor any procedure by which to do so. The Claims Court is not a 'court of the United States' in terms of 28 U.S.C. § 1915. It was, however, formed to continue a function previously part of an Article III court. Because of this unique provenance, and the importance of the question, we do not today decide whether the Claims Court has the power to appoint counsel under any circumstance.

*Id.* at 1271. However, this previously existing doubt should have been removed by a statutory clarification adopted eighteen years ago specifying that this court is empowered to apply Section 1915, including Subsection (e) relating to appointment of counsel. *See* Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L.

---

1. Mr. Washington included with his motion a request for an extension of time, but that request is inapposite. The court received Mr. Washington's complaint on June 1, 2010, and the government's answer or other response is due on or before August 2, 2010. In the interim, Mr. Washington has no required submissions due and thus there is no need for an extension of time for him to make any filing.

Mr. Washington also has pending a motion for leave to proceed *in forma pauperis,* to which the government also has not yet responded. For purposes of Mr. Washington's motion for appointment of counsel, the court assumes that he is entitled to proceed in that fashion.

No. 102–572, § 909, 106 Stat. 4506, 4519 (codified as amended at 28 U.S.C. § 2503(d)) ("[F]or the purpose of construing sections 1821, 1915, 1920, and 1927 of this title, the United States Court of Federal Claims shall be deemed to be a court of the United States.").

Nonetheless, an unpublished, and thus non-precedential, Federal Circuit decision in 2001 continued to call into question this court's ability to apply Section 1915. *See Kimble v. United States*, 25 Fed.Appx. 926, 929 (Fed.Cir.2001) (stating that the Court of Federal Claims lacks the statutory authority to appoint counsel under Section 1915). More recently, this court has pointed to the *Kimble* decision, the confusion that it has created, and the desirability of the Federal Circuit to speak more cogently on the matter. *See Heuss v. United States*, 75 Fed.Cl. 636, 637 (2007) ("Although not citable as precedent, *see Fed. Cir. R. 32.1,* the court notes the statement in *Kimble* that, because the statute granting courts discretion to appoint counsel only applies to Article III courts, 'the Court of Federal Claims has no statutory authority to appoint counsel' because it is an Article I court.") (citing *Kimble,* 25 Fed.Appx. at 929). Manifestly, the commentary in *Kimble* did not take into account the provisions of 28 U.S.C. § 2503(d), and, given those provisions, the statement of the court of appeals in *Kimble* is incorrect. However, the court of appeals has not yet had an opportunity to recalibrate its position in light of currently existing statutory law.

Notwithstanding *Kimble,* this court has interpreted the 1992 Act as an explicit congressional authorization for the Court of Federal Claims to apply all applicable provisions of Section 1915:

> [T]he statutory 'conundrum' created by Congress in 1982 when it removed the Court of Claims from the list of 'courts of the United States' recognized under 28 U.S.C. § 451 without providing for the newly created Claims Court to assume that authority in regard to statutes such as 28 U.S.C. § 1915 has been resolved by act of Congress, *see* 28 U.S.C. § 2503(d). This court has the authority under 28 U.S.C. § 2503(d) to exercise

the functions defined in 28 U.S.C. § 1915.

*Hayes v. United States,* 71 Fed.Cl. 366, 368 (2006) (internal citation omitted).

■ In short, this court has the ability to cause the appointment of counsel in civil cases. However, that power should only be exercised in extreme circumstances. The Supreme Court has indicated that an appointment of counsel in civil cases may be appropriate when quasi-criminal penalties or severe civil remedies are at stake, such as those in a civil commitment proceeding or when an indigent risks losing his or her child in a custody case. *See, e.g., Lassiter v. Department of Soc. Servs.,* 452 U.S. 18, 30–32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (child custody); *Vitek v. Jones,* 445 U.S. 480, 496–97, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (plurality) (civil commitment); *see also Lariscey,* 861 F.2d at 1270 ("In civil proceedings, however, the right to counsel is highly circumscribed, and has been authorized in exceedingly restricted circumstances. For example, the Supreme Court has held that procedural due process may require appointment of counsel for indigent parents in child custody termination proceedings.") (*referring to Lassiter,* 452 U.S. 18, 101 S.Ct. 2153). In *Lariscey,* the Federal Circuit similarly noted that the Supreme Court in *Lassiter* drew upon the earlier ruling in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to guide the determination of whether extraordinary circumstances existed. *Lariscey,* 861 F.2d at 1270 ("The *Lassiter* court held that the determination requires evaluation of the three elements set in *Mathews v. Eldridge* for deciding what due process requires, 'viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions.' " (quoting *Lassiter,* 452 U.S. at 27, 31, 101 S.Ct. 2153)) (internal citation omitted); *see also Lassiter,* 452 U.S. at 31, 101 S.Ct. 2153 ("The dispositive question ... is whether the three *Eldridge* factors, when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus to lead to the conclusion

that the Due Process Clause requires the appointment of counsel when a State seeks to terminate an indigent's parental status."). The Court in *Lassiter* found that the balancing of these factors did require trial courts to provide an indigent parent with counsel in a very circumscribed set of custody cases. *Lassiter*, 452 U.S. at 31, 101 S.Ct. 2153 ("[T]he parent's interest is an extremely important one.... [While] the State shares with the parent an interest in a correct decision, [it] has a relatively weak pecuniary interest, ... [and] in some but not all cases, [it] has a possibly stronger interest in informal procedures.... [T]he complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high."). Notably, the Supreme Court maintained the bar for granting counsel in civil cases at a very high level by refusing to grant counsel to *all* child custody cases involving indigent parents, including the case actually before the court, despite the strong interests possessed by parties in such cases. *See id.*

■ Thus, only in civil cases that present an extreme hardship to petitioner are courts empowered to cause legal assistance to be provided, and this case, which involves a complaint against the U.S. Army for damages, does not rise to the level of "extraordinary circumstance" that necessitates civil legal assistance. Specifically, Mr. Washington claims that the U.S. Army discriminated against him on the basis of his mental disability, forced him to undergo a mental health examination, and failed to provide a promised reference for him to potential future employers. Pl.'s Compl. at 2–3. Mr. Washington requests monetary damages of $900,000. *Id.* at 3. While the court acknowledges Mr. Washington's needs, it must also recognize that, when balanced against the government's interest and taking into account considerations of procedural due process, Mr. Washington's interest does not rise to the level of extraordinary circumstances that would call for the court to cause counsel to be appointed for him.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion is DENIED.

It is so ORDERED.