Boaz PLEASANT–BEY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–258 C.

United States Court of Federal Claims.

July 26, 2011.

Boaz Pleasant–Bey, Whiteville, TN, Plaintiff, pro se.

Daniel G. Kim, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

DAMICH, Judge.

Before the court is "Defendant's Motion to Dismiss *Pro Se* Complaint for Lack of Subject Matter Jurisdiction" ("Def.'s Mot.").

In his Complaint, Boaz Pleasant–Bey ("Plaintiff"), presently incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee, alleges that he is being racially discriminated against by "the prejudice from Antiquity ensued [sic] in the racially offensive language of the U.S. [Constitution] which degrades his entire race of people and does not include them in the marked language of the words 'People of the U.S.' and 'Citizens' as used in the U.S. [Constitution]." Compl. at 1. Plaintiff also alleges that he is being "deprived of his birthright to proclaim the sovereignty of his Native African Ancestory [sic]." *Id.* at 4. In particular, he objects that his birth certificate (and somehow his Social Security card) imposes a "slave name" and identifies him as "Black," whereas he seeks identification as a "Sovereign Native African, who is indigenous to the U.S. of A." *Id.* at 5.

In his "Demand for Relief," Plaintiff seeks damages of $50 million in "100% pure gold." He also asks that he be exempted from all taxes within the jurisdiction of the United States, that Congress amend the U.S. Constitution to incorporate "all Indigenous Native Africans (Whose Ancestors Were Sold As Slaves In The United States of America)" within the meaning of the phrases "People of the United States" and "Citizens" as used throughout the Constitution, and that Congress "create and establish legitimate means" for Plaintiff to be identified, respected and nationally recognized by the United States as a "Sovereign Indigenous Native African." *Id.* at 5.

In addition to his Complaint, Plaintiff has moved the court for leave to proceed *in forma pauperis* ("IFP") and for the court to appoint counsel to represent him.

For the reasons explained below, the court GRANTS Plaintiff's "Motion For Leave To Proceed *In Forma Pauperis*," DENIES his motion for the appointment of counsel, and GRANTS Defendant's motion to dismiss.

## I. Standard of Review

■ Parties acting *pro se* are generally held to "less stringent standards" than professional lawyers. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); *Forshey v. Principi,* 284 F.3d 1335, 1357 (Fed.Cir.2002) ("[T]he pleadings of *pro se* litigants should be held to a lesser standard than those drafted by professional lawyers....").

■ However, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." *Demes v. United States,* 52 Fed.Cl. 365, 369 (2002). Moreover, "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987)).

## II. Motion to Proceed *In Forma Pauperis*

■ The United States Court of Federal Claims is authorized, pursuant to 28 U.S.C. § 1915(a)(1), to allow an indigent plaintiff to file a complaint without the payment of a filing fee, i.e., *in formal pauperis. See* 28 U.S.C. § 2503(d); *see also Washington v. United States,* 93 Fed.Cl. 706, 708 (2010); *Hayes v. United States,* 71 Fed.Cl. 366, 368 (2006). In order to proceed *in forma pauperis,* § 1915(a)(1) requires an applicant to file an affidavit listing the applicant's assets, declaring he is unable to pay such fee or to provide security therefor, and stating the nature of the action, defense, or appeal and the affiant's belief that he is entitled to redress. If the applicant is a prisoner, § 1915(a)(2) requires that the applicant also submit a certified copy of the applicant's trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the action. The determination whether a plaintiff has met the requirements for proceeding *in forma pau-*

*peris* is left to the discretion of the presiding judge. *Waltner v. United States,* 93 Fed.Cl. 139, 141 (2010). It is not necessary that the plaintiff be "absolutely destitute," but rather that the payment of the filing fee would constitute a "serious hardship." *Hayes,* 71 Fed.Cl. at 369.

■ Here, Plaintiff has submitted a certificate from the Department of Correction, West Tennessee State Penitentiary, indicating that as of March 2011 his account there had a balance of $0.00 and that his average daily balance for the previous 21 days was $0.00. A "Resident Account Statement" from Shelby County (TN) Jail indicates he had a balance from January 2010 to August 2010 of $0.00. A "Receivable Charge Receipt" from Shelby County Jail, dated January 13, 2011, indicates he had a "Commissary Balance" of $0.00 and a "Debt Balance" of $896.46. Additionally, the Supreme Court of Tennessee has observed that Plaintiff appears to be indigent. *State v. Pleasant–Bey,* No. W2009–01951–SC–S10–CD, 2009 Tenn. LEXIS 866 (Dec. 21, 2009).

Although he has not submitted the IFP application form provided by the Court of Federal Claims, the court finds, based on his complaint and motion, that Plaintiff has submitted sufficient information pertaining to his lack of assets and his inability to pay the fee. A prisoner granted IFP status with respect to bringing the action initially is nevertheless "required to pay the full amount of a filing fee" over time. 28 U.S.C. § 1915(b)(1). The court is required to assess and collect, when funds are available, an initial partial filing fee of 20% of the average monthly deposits to the prisoner's accounts or the average monthly balance in his account for the 6–month period preceding the filing of the complaint. *Id.; see Telemaque v. United States,* 2011 WL 2582201 at *5 (Fed. Cl. June 29, 2011). Thereafter, the agency or institution with custody over the prisoner is charged with the responsibility to make monthly payments from his account (of 20% of his preceding month's income, when the amount in the account exceeds $10) until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

Plaintiff's "Motion For Leave to Proceed *In Forma Pauperis*" is GRANTED, but he is hereby ordered to make the various payments over time in satisfaction of the filing fee in full as noted above.

### III. Motion for Appointment of Counsel

■ Plaintiff's motion for appointment of an attorney to represent him cites his need to obtain "relevant exculpatory evidence" in his "cause." Pursuant to 28 U.S.C. § 1915(e)(1), this court has the authority to "request an attorney to represent any person unable to afford counsel." *See Matthews v. United States,* 2011 WL 976729 (Fed.Cl.2011) (unpublished).

■ As a general rule, an indigent's right to appointed counsel is recognized "only where the litigant may lose his physical liberty if he loses the litigation," such as in a criminal action. *Lassiter v. Dept. of Soc. Servs.,* 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In a civil matter, the court's involvement in securing counsel is appropriate only in "extraordinary circumstances," such as where the plaintiff might lose custody of a child or risk civil commitment himself. *See Washington v. United States,* 93 Fed.Cl. 706, 708 (2010) (citing, e.g., *Lassiter,* 452 U.S. at 30–32, 101 S.Ct. 2153; *Vitek v. Jones,* 445 U.S. 480, 486–97, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (plurality)).

■ Plaintiff's "cause" here does not constitute such an extraordinary circumstance and the court accordingly DENIES Plaintiff's motion.

### IV. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Complaint

■ Whether a court possesses jurisdiction is a threshold matter in every case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*" *Folden v. United States,* 379 F.3d 1344, 1354 (Fed. Cir.2004); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.

1998); *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.1993). While *pro se* parties are held to "less stringent standards," *Haines,* 404 U.S. at 520, 92 S.Ct. 594, "a court may not similarly take a liberal view of ... jurisdictional requirement[s] and set a different rule for *pro se* litigants only." *Kelley,* 812 F.2d at 1380 (emphasis added).

This court's jurisdiction is prescribed by the Tucker Act, 28 U.S.C. § 1491 (2006). Under the Tucker Act, this court's jurisdiction is limited to monetary claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort.*" *Id.* § 1491(a)(1) (emphasis added). The Tucker Act is only a jurisdictional statute and does not create any independent substantive rights enforceable against the United States for money damages. *See, e.g., United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("[T]he [Tucker] Act merely confers jurisdiction upon [this Court] whenever the substantive right exists."). In other words, not every claim involving the United States Constitution or an Act of Congress is recognizable under the Tucker Act. Rather, a plaintiff's claim must be for money damages based on a "money-mandating" source of substantive law. *See Jan's Helicopter Serv., Inc. v. FAA,* 525 F.3d 1299, 1309 (Fed.Cir. 2008). If the court concludes that a plaintiff's claim is not based on a "money-mandating" source of substantive law, then the claim falls outside this court's jurisdiction. *Metz v. United States,* 466 F.3d 991, 997 (Fed.Cir.2006).

Defendant has filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). A challenge to the court's "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999). When deciding a motion to dismiss pursuant to RCFC 12(b)(1), the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). Nevertheless, a plaintiff still bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction."). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." RCFC 12(h)(3). Even assuming all of Plaintiff's factual allegations are true and drawing all reasonable inferences in his favor, the court still finds that Plaintiff has failed to make a claim within this court's jurisdiction.

In his Complaint, Plaintiff argues that this court has jurisdiction because Plaintiff "suffers irreparable injury and discrimination by the Acts of Congress." Compl. at 4. Specifically, Plaintiff alleges that Congress has failed to correct and alleviate discrimination caused by racially-offensive language in the U.S. Constitution. *Id.* at 4. In support of his argument, Plaintiff cites to the Thirteenth and Fourteenth Amendments and their supposed failure to include Plaintiff's race within the meaning of "People of the United States" and "Citizens." However, this court does not have jurisdiction over claims based on either the Thirteenth Amendment or Fourteenth Amendment because neither mandates the payment of money damages. *See, e.g., Le-Blanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995) (no jurisdiction over Fourteenth Amendment violations because not money-mandating); *Johnson v. United States,* 79 Fed.Cl. 769, 774 (2007) (no jurisdiction over Thirteenth Amendment violations because not money-mandating). Indeed, this court does not have jurisdiction over any claims based on the Amendments to the Constitution except for the Takings Clause of the Fifth Amendment, because it is "undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for pur-

poses of Tucker Act jurisdiction." *Jan's Helicopter Serv.*, 525 F.3d at 1309.

■■■■■ Plaintiff also cites to the Ku Klux Klan Act, Civil Rights Act of 1871, and "42 U.S.C. § 1981 *et seq.*" in support of his allegations of racial discrimination. Compl. at 4. However, it is well-settled that this court does not have jurisdiction to hear discrimination claims arising under Title VII of the Civil Rights Act, 42 U.S.C. § 1981 or 42 U.S.C. § 1983. *See Osborn v. United States*, 47 Fed.Cl. 224, 232 (2000). Such jurisdiction has explicitly been given to the United States District Courts, not the United States Court of Federal Claims. *See* 28 U.S.C. § 1343(a)(4). To the extent that Plaintiff may be making a claim based in tort, it is explicitly clear that this court would not have jurisdiction to hear such a case. *See* 28 U.S.C. 1491(a)(1). As for Plaintiff's demand that this court order Congress to amend the United States Constitution and create means by which Plaintiff can be nationally recognized as a "Sovereign Indigenous Native African" who is not taxed in the United States, this court does not have the power to "grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment." *James v. Caldera*, 159 F.3d 573, 580–81 (Fed. Cir.1998).

Accordingly, the court lacks subject matter jurisdiction over Plaintiff's Complaint. Defendant's Motion to Dismiss is GRANTED.

## V.  Transfer to a Federal District Court is Inappropriate

■■■■ Although Plaintiff has not specifically requested a transfer of this case to a district court, the court considers the possibility because Plaintiff is acting *pro se*. *Vaizburd v. United States*, 384 F.3d 1278, 1285 n. 8 (Fed.Cir.2003). In order to transfer a case, the court must determine that (1) it lacks subject matter jurisdiction, (2) the case could have been brought in the transferee court at the time the case was filed, and (3)

that a transfer is "in the interest of justice." 28 U.S.C. § 1631.

■■■ The court has already determined that it lacks subject matter jurisdiction. As for the second element of Section 1631, a federal district court would, presumably, be the proper forum if it is found that Plaintiff is properly alleging racial discrimination. Therefore, whether or not this case should be transferred rests upon whether it would be "in the interest of justice" to do so.

Prior to this case, Plaintiff filed a complaint before the United States District Court for the District of Maryland on November 22, 2010. Specifically, Plaintiff filed a class-action complaint, pursuant to 42 U.S.C. § 1983, on behalf of all members of the "Moorish American/African American Race." *Pleasant–Bey v. United States*, No. DKC–10–3316 (D.Md. Dec. 7, 2010). According to Plaintiff, his race was not included within the meaning of "People of the United States" and "Citizen" as used in the United States Constitution and demanded $25,000 per year for each member of his race. *Id.* The District Court held that Plaintiff had failed to allege any facts which would constitute a cognizable claim in any federal district court and dismissed the case. *Id.* The District Court also informed Plaintiff that if he continued to file similar proceedings, he would be assigned a "strike" pursuant to 28 U.S.C. § 1915(g).[1] *Id.*

Plaintiff's current complaint before this court is substantially similar to the case he filed in the District Court. The District Court dismissed his case for failure to state a claim upon which relief can be granted. For that reason, this court concludes that Plaintiff's case would be dismissed if it were transferred to a federal district court. Accordingly, transfer of this matter to a federal district court is not warranted.

## VI.  Conclusion

For the reasons discussed above, IT IS HEREBY ORDERED:

---

1. "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was

dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

1. Plaintiff's "Motion for Leave to Proceed *In Forma Pauperis*" is **GRANTED,** subject to his obligation to pay the filing fee in full pursuant to 28 U.S.C. § 1915(b).
2. Plaintiff's "Motion for Appointment of Attorney" is **DENIED.**
3. Defendant's Motion to Dismiss is **GRANTED** and the Clerk of Court is directed to **DISMISS** Plaintiff's Complaint without prejudice.